U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

MAR 28 2003

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JONATHAN BRUCE REED,

    Petitioner,

    v.

GARY JOHNSON, Director,
Texas Department of Criminal Justice,
Institutional Division, Respondent.

CIVIL ACTION NO. 3:99-CV-0207-R

PETITIONER'S MOTION FOR
HEARING REGARDING
DISQUALIFICATION PURSUANT TO
28 U.S.C. § 445

**ORAL ARGUMENT REQUESTED**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

I.    **Introduction**

On February 25, 2003, the United States Supreme Court decided *Miller-El v. Cockrell*, __ U.S. __, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003). *Miller-El* singled out the Dallas County District Attorney's Office (DA's Office) for extensive criticism concerning its practice, in the early 1980s, of consistently discriminating against African-Americans in the selection of criminal juries. The Court described the DA's Office as "suffused with bias," and noted not only the Office's documented history of excluding African-American veniremembers from juries, but also emphasized the racially disparate questioning techniques used by the prosecution team. Assistant United States Attorney Paul Macaluso, then a member of the DA's Office, was one of the two members of that team.

In *Reed v. Cockrell*, Mr. Reed presented a substantially identical claim regarding the prosecution's successful effort to remove **all** African-American veniremembers from the jury. In Mr. Reed's case, as in *Miller-El*, Mr. Macaluso conducted the State's voir dire.

Subsequent litigation has centered upon whether Mr. Macaluso intentionally excluded veniremembers based on their race.

Upon information and belief, as detailed below, Mr. Macaluso has had at least one extended conversation with Magistrate Judge Stickney regarding his views on race, including his denials that he has racist views, while Mr. Reed's case, including the claims related to Mr. Macaluso's jury selection strategy, was pending before Magistrate Judge Stickney.

## II.    Applicable Legal Standard

28 U.S.C. §455(a) requires the disqualification of a federal judge in any situation in which "a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860-61 (1988). Because the goal of §455(a) is the avoidance of even the appearance of impropriety, it requires judicial disqualification when any appearance of impartiality exists, **even if the judge in question would be able to make an impartial decision**. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825 (1986) (disqualification rules "may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties"); *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995).

When reviewing potential partiality, a court may not draw inferences in favor of a judge's "honesty and care," for doing so ignores the fact that "an observer of our judicial system is less likely to credit judges' impartiality than the judiciary." *Id.* at 157. An appearance of partiality is more likely to be found when the judge has been exposed to some sort of extra-judicial influence, pressure or knowledge, although this is not a strict prerequisite to a bias claim. *Liteky v. United States*, 510 U.S. 540 (1994). Impartiality cases

2

are "extremely fact intensive and fact bound," and require a careful assessment of the particular circumstances of each case. *Jordan*, 49 F.3d 157. Finally, although the recusal standard is the same for civil and criminal cases, courts should be more sensitive to the appearance of bias when a person's liberty is at stake than when it is a mere question of money. *Id.* at 158 n.9 ("[W]e must look both ways more carefully when crossing this dangerous street from the civil side to the criminal side than we do when crossing in the opposite direction.").

### III.    Basis for Hearing On Possible Disqualification of Magistrate Judge Stickney

Counsel recently learned of a lengthy courtroom conversation between Magistrate Judge Stickney and Paul Macaluso on March 12, 2003 in which, upon information and belief, Mr. Macaluso expressed to Magistrate Judge Stickney his distress regarding *Miller-El*'s unmistakable suggestion that he acted with racial bias against minorities. Upon information and belief, Mr. Macaluso argued at length that:

- He did not, in fact, act with a discriminatory motive in the Miller-El case, and that the Supreme Court majority opinion erred when it suggested he had.

- He has **never** discriminated on the basis of race during jury selection, harbors no prejudice against minorities, and never has.

- Supreme Court Justice Clarence Thomas' opinion, which credits the race-neutral strike justifications provided by Mr. Macaluso, expresses a correct understanding of the jury selection in *Miller-El*.

Upon information and belief, during this conversation, Magistrate Judge Stickney told Mr. Macaluso that he had a case under consideration raising similar issues, but that *Miller-El* could be "distinguished" and would not affect the resolution of that case. Upon information and belief, Mr. Reed alleges that the case with similar issues to which the Magistrate Judge referred was, in fact, Mr. Reed's case.

3

This last fact is unquestionably vital. The most important question before the Magistrate Judge is precisely the extent to which *Miller-El* affects Reed. The District Court denied Mr. Reed's habeas petition on February 20, 2003. (Docket No. 126) On March 5, 2003, Mr. Reed filed a detailed Rule 59(e) motion in the District Court, arguing that *Miller-El* was virtually on all fours with Mr. Reed's case, and clearly required a fundamental reassessment of the Magistrate Judge's Recommendation. (Docket No. 128) The District Court referred this motion to the Magistrate Judge. Shortly after, the Respondent, taking the unusual step of responding to a 59(e) Motion, filed a motion arguing that *Miller-El* does not affect Mr. Reed's case. (Docket No. 130)

Thus, the Magistrate Judge has already expressed an opinion on what is **the** crucial issue in the case, in the context of an extra-judicial discussion with **the** critical fact witness in the case. This set of events could cause a reasonable observer to question the Magistrate Judge's impartiality, and counsels that the Magistrate Judge should disqualify himself from hearing further proceedings in this case because a reasonable observer would question his impartiality. *See* 28 U.S.C. §455(a).

There is another basis for disqualification: Magistrate Judge Stickney has heard Mr. Macaluso argue that his race-neutral strike reasons were credible and that he has never discriminated in jury selection. This exposure obviously took place in an "extra-judicial" setting. *See, e.g., Liteky v. United States*, 510 U.S. 540, 550-51 (1994) (distinguishing information the judge receives during present or prior judicial proceeding from information from an extra-judicial source, and holding that bias not stemming from an extra-judicial source will ordinarily not support a disqualification motion). Counsel for Mr. Reed were not aware of this discussion, and were not present to assess and respond to the implications of

Mr. Macaluso's argument for the issues in Mr. Reed's case. Magistrate Judge Stickney has obtained "personal knowledge of disputed evidentiary facts [*i.e.*, Macaluso's credibility and attitude toward jury selection] concerning the proceeding." 28 U.S.C. § 455(b)(1).

In light of these substantial allegations, a hearing is necessary to establish the underlying facts concerning Mr. Macaluso's communications with Magistrate Judge Stickney regarding the Reed case. Such an inquiry is a necessary prerequisite to this Court's decision regarding what steps to take to protect Mr. Reed's right to a fair review.

## IV.   Evidentiary Hearing Must Address Mr. Macaluso's Other Contacts With The Judges Of The Northern District Of Texas.

The disqualification of the Magistrate Judge may well be insufficient to ensure that Mr. Reed receives review of his claims untainted by an appearance of impropriety. Upon information and belief, Mr. Macaluso has a close professional relationship with several of the judges of the Northern District. As a senior Assistant United States Attorney, Mr. Macaluso is obviously in routine contact with many of the United States District Judges and United States Magistrate Judges in the Northern District of Texas. It is apparently common for Mr. Macaluso to lunch with and attend social events with Northern District Judges and Magistrate Judges.

Mr. Reed believes that this state of affairs jeopardizes his chances of receiving thorough and impartial consideration of his claims in two ways.

First, Paul Macaluso was the most important fact witness during Mr. Reed's state-level *Batson* litigation. Whether Mr. Reed obtains relief on his *Batson* claim depends on an evaluation of Mr. Macaluso's credibility in light of the extensive evidence suggesting that Mr. Macaluso exercised his peremptory strikes in a racially discriminatory manner. This critical fact witness has apparently made comments to many people — including at least one

Northern District Magistrate Judge — about his actions in the Miller-El case and, more importantly, about his approach to jury selection and his belief in racial tolerance. Mr. Macaluso's general denials that he has *ever* discriminated on the basis of race in picking a criminal jury implicate Mr. Reed's case. Indeed, given that Mr. Macaluso is apparently angry about the Supreme Court's decision, it is almost certain that he has developed several lines of argument in defense of his actions while a Dallas County Assistant District Attorney. It seems logical that he would **especially** wish to assure judges in front of whom he practices that he has never discriminated on the basis of race in any case, and has always struck African American jurors solely for race-neutral reasons.

Second, Mr. Macaluso evidently views the Supreme Court's decision in *Miller-El* as tantamount to an accusation that he is a racist. He would thus likely view a decision favorable to Mr. Reed with the same level of dismay. Any judge, therefore, who contemplates granting Mr. Reed a new trial based on his meritorious *Batson* claim necessarily risks offending and alienating a professional colleague with whom he will have to work closely in the future. Under these circumstances, a reasonable observer could conclude that any judge who has had extensive dealings with Mr. Macaluso—especially one who has heard Macaluso's adamant denials of racism—may feel inclined to deny Mr. Reed's claim or dismiss it on procedural grounds. This circumstance creates a situation in which the "impartiality" of any judge with a professional relationship to Mr. Macaluso "might reasonably be questioned." 28 U.S.C. § 455(a).

In order to determine whether Mr. Macaluso has had such contact with other judges (in addition to Magistrate Judge Stickney), Mr. Reed requests that at the hearing regarding Mr. Macaluso's communications with Magistrate Judge Stickney, he be given the

6

opportunity to question Mr. Macaluso and all potential decision-makers in this case on the following subjects: how frequently they come in contact with Mr. Macaluso, to what extent they socialize with Mr. Macaluso, and whether they have ever discussed *Miller-El* or Mr. Macaluso's jury-selection practices with Mr. Macaluso. Obviously, Mr. Macaluso must also be questioned concerning what he has said to others about the *Miller-El* case (and the several other cases in which he has been implicated in intentional racial discrimination), and about his philosophy concerning jury selection and racial discrimination.

In the alternative, Mr. Reed suggests that, to eliminate all potential for bias whatsoever, his case should be transferred to another judicial district. This is a recognized means of completely removing any appearance of bias in recusal cases. *See, e.g., Jordan v. United States*, 49 F.3d 152, 159-60 (5th Cir. 1995) (transferring case to different judicial district after finding appearance of bias, and noting with approval previous case which employed same remedy).

## V.  Conclusion

"The right to a fair and impartial trial is fundamental to the litigant; fundamental to the judiciary is the public's confidence in the impartiality of our judges and the proceedings over which they preside. Justice must satisfy the appearance of justice." *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995) (quotation omitted). The prosecutor involved in Mr. Reed's trial removed all the African Americans from his jury, has already been found to have intentionally discriminated in another case, and may well be headed for a second official finding of intentional discrimination. This very prosecutor now enjoys constant access to the decision-makers who control Mr. Reed's fate, and has apparently been addressing them at length in a manner directly adverse to Mr. Reed's position. Under such circumstances, an

7

objective observer would unquestionably harbor doubts whether Mr. Macaluso's actions had tainted Mr. Reed's chances of a fair examination of his claims. And the reputation of the judiciary is certainly never more in question than in a case such as this one—in which a petitioner faces execution upon weak evidence of guilt, and after trial by a District Attorneys' Office recently found by eight Justices of the United States Supreme Court to be "suffused with bias."

This Court should order a hearing to determine whether a material witness's communications and relationships with Magistrate Judge Stickney and other judicial officers of the Northern District of Texas have prevented and will prevent Mr. Reed from obtaining a thorough and impartial consideration of his claims. In the alternative, the Court should order the transfer of Mr. Reed's case out of the Northern District of Texas.

Respectfully submitted this 21' day of March, 2003.

Meredith Martin Rountree
Texas Bar No. 24033544

Member, Bar of the United States District Court
For the Northern District of Texas

510 South Congress Avenue, Suite 308
Austin, TX 78704
(512) 320-0334 (o)
(512) 320-8027 (f)

Attorney For Petitioner Jonathan Reed

8

## CERTIFICATE OF CONFERENCE

This certifies Meredith Martin Rountree, co-counsel for Petitioner, conferred with counsel for Respondent on March 26, 2003, concerning *Petitioner's Motion For Hearing Regarding Disqualification Pursuant To 28 U.S.C. § 445.* Counsel for Respondent indicated that Respondent OPPOSES this Motion.

_____
Meredith Martin Rountree
Counsel for Petitioner

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing *Petitioner's Motion For Hearing Regarding Disqualification Pursuant To 28 U.S.C. § 445* upon counsel for Respondent by sending same via United States Mail addressed to:

> Asst. Attorney General Richard Broughton
> Office of the Attorney General
> Capital Litigation Division
> P.O. Box 12548, Capitol Station
> Austin, TX 78711

this **27**th day of March, 2003.